UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY P.<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. ED CV 17-2223-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On October 31, 2017, plaintiff Kimberly P. filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two general issues for decision: whether the Administrative Law Judge ("ALJ") erred at step five in multiple respects, and whether the ALJ properly considered plaintiff's subjective complaints. *See* Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 10-20; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-16.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered plaintiff's testimony but erred in part at step five. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-two years old on her alleged disability onset date, completed the ninth grade. AR at 168, 646. She has past relevant work as a sales attendant. *Id.* at 661.

On October 7, 2010, plaintiff applied for DIB and SSI, alleging she has been disabled since June 9, 2010, due to type 2 diabetes, neuropathy, heart palpitations, anxiety, depression, panic attacks, nerve damage, carpal tunnel in the right arm, hyperlipidemia, severe acid reflux, insomnia, and high cholesterol. *Id.* at 149-50, 161-68, 172. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 85-89, 93-104.

On July 16, 2010, plaintiff, represented by counsel, appeared and testified before the ALJ. *Id.* at 37-81. The ALJ also heard testimony from Samuel Landau, a medical expert, and David A. Rineheart, a vocational expert ("VE"). *Id.* at 55-81.

On August 7, 2012, the ALJ denied plaintiff's claim for benefits. *Id.* at 17-

31. Plaintiff filed a timely request for review of the decision, which the Appeals Council denied. *Id.* at 1-6, 12-13.

Plaintiff appealed the Commissioner's decision to this court. *Id.* at 725-31. This court, in case number ED CV 14-212-SP, reversed the Commissioner's decision and remanded the case on May 20, 2015, finding the ALJ erred at step five in failing to reconcile an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") regarding whether plaintiff could perform jobs the DOT states require average finger dexterity, given the manual limitation the ALJ determined plaintiff to have. *Id.* at 732-46. Upon remand, the ALJ was directed to assess plaintiff's dexterity and determine whether such dexterity was consistent with the DOT requirements for each job plaintiff was found capable of performing. *See id.* at 745.

On December 15, 2015, plaintiff, represented by counsel, appeared and testified before another ALJ. *Id.* at 638-95. The ALJ also heard testimony from Carmen Roman, a VE. *Id.* at 659-93.

The ALJ again denied plaintiff's claim for benefits on April 7, 2016. *Id.* at 617-30. Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity between June 9, 2010, the alleged disability onset date, and December 31, 2015, the date last insured. *Id.* at 622.

At step two, the ALJ found plaintiff suffered from the following severe impairments: disorder of the left knee; carpal tunnel syndrome, status post release on the right side; diabetes with neuropathy; fibromyalgia; obesity; mood disorder secondary to chronic pain; and unspecified anxiety disorder. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 623.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the RFC to perform light work, with the limitations that plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; push and pull within the same weight limits, but only occasionally as to the right upper extremity; stand and walk four hours out of an eight-hour workday, but no prolonged walking greater than about 15 minutes at a time, and with the ability to use a cane; and sit six hours out of an eight-hour workday, with the ability to stand and stretch within normal breaks and lunches. *Id.* at 624. The ALJ precluded plaintiff from: using ladders, ropes, and scaffolds; climbing stairs more than twice a day; kneeling, crawling, crouching, squatting, running, or jumping; using foot pedals with the bilateral lower extremities; hazardous work environments such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles; forceful gripping or grasping with the bilateral upper extremities. *Id.* at 624-25. Plaintiff additionally could: perform frequent, but not repetitive, fine and gross manipulation with the bilateral upper extremities; perform noncomplex tasks; have occasional contact with the public; and perform occasional tasks requiring teamwork. *Id.* at 625.

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work as a sales attendant. *Id.* at 629.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including mail sorter and storage facility rental clerk. *Id.* at 629-30. Consequently, the ALJ concluded

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 630.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 597-600, 611-13. The decision of the ALJ stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing

5

the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

### A. The ALJ Erred in Part at Step Five

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, including mail sorter, with 25,000 jobs nationally after erosion due to plaintiff's limitations, and storage facility rental clerk, with 20,000 jobs nationally after erosion. AR at 629-30. Plaintiff first argues the ALJ erred in finding plaintiff could have performed the job of storage facility rental clerk given that the VE conceded the position was not appropriate for plaintiff given that she was limited to only occasional contact with the public. P. Mem. at 10; *see* AR at 668. Defendant concedes this error, but argues it is harmless given the ALJ's additional finding that plaintiff could perform the job of mail sorter. D. Mem. at 2. Thus, the question becomes whether the ALJ erred at step five in finding plaintiff could perform the job of mail sorter, with 25,000 such positions she could perform with her limitations.

Plaintiff makes three arguments with respect to the ALJ's step five finding that plaintiff could perform the position of mail sorter. First, plaintiff argues substantial evidence does not support the ALJ's finding that there were 25,000 mail sorter jobs plaintiff could perform after a 50% reduction for limitations in standing and walking. P. Mem. at 12-13. Second, plaintiff argues there is a conflict between the educational requirements in the Occupational Outlook Handbook ("OOH") for the mail sorter position and her educational background. *Id.* at 17-19. Lastly, plaintiff argues there is a conflict between the DOT's

requirements for the mail sorter position and plaintiff's RFC limitation to noncomplex work. *Id.* at 17.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 416.912(f).[2]

### 1. The ALJ Did Not Err in Accepting the VE's Testimony Regarding the Number of Jobs Available

Plaintiff argues the VE's finding that there were 25,000 mail sorter jobs nationally after 50% erosion deviated from the numbers provided by Job Browser Pro without explanation. P. Mem. at 12-13. Plaintiff argues the ALJ therefore erred in accepting the VE's testimony. *Id.*

In response to a hypothetical that includes the limitations the ALJ found credible, a VE may testify as to "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). "A VE's recognized expertise provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Accordingly, VE testimony is substantial evidence. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("'[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.'") (quoting *Conn v. Sec'y*, 51 F.3d 607, 610 (6th Cir. 1995)); *see also Bayliss*, 427 F.3d at 1218, n.4 (Federal Rules of Evidence do not apply in

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

7

social security hearings). But where the VE testimony is fundamentally flawed, remand is appropriate. *See, e.g., Farias v. Colvin*, 519 Fed. Appx. 439, 440 (9th Cir. 2013) (remand required where VE provided employment data for a different occupation than the one he opined claimant could perform).

At the hearing, the VE testified that an individual with plaintiff's RFC would be able to perform the mail sorter position. AR at 663. The VE testified that after 50% erosion for plaintiff's standing and walking limitation, there would be 25,000 positions available in the national economy. *Id.* When asked about her data source for the number of document preparer jobs she testified existed, the VE testified her source was Job Browser Pro, and explained she "just basically use[s] what [Job Browser Pro] give[s] us." *Id.* at 673-74. She was not asked, and did not testify, what her data source was for the mail sorter position, although her testimony implies it would have come from Job Browser Pro too.

After the hearing, plaintiff augmented the record with documents counsel described as prints from Job Browser Pro. The pages appear to show only 3,389 mail sorter positions nationally, which would be about 1,700 positions after 50% erosion, contrary to the VE's testimony of 25,000 such jobs after erosion. *See id.* at 983. By contrast, the pages appear to show 41,595 storage facility rental clerk positions, consistent with the VE's testimony of 20,000 such jobs after erosion. *See id.* at 663, 985. Plaintiff argues the VE's testimony to the number of mail sorter positions was not substantial evidence given this unexplained deviation.

Courts in this district have found an ALJ is entitled to rely on a VE's testimony regarding the number of jobs in the economy, and have also found a plaintiff's lay assessment of raw vocational data from Job Browser Pro does not detract from the VE's opinion. *See Kirby v. Berryhill*, 2018 WL 4927107, at *5 (C.D. Cal. Oct. 10, 2018) (VE's testimony concerning number of jobs was substantial evidence, and "lay assessment of raw [Job Browser Pro] data cannot

rebut a vocational expert's opinion"); *Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (while raw Job Browser Pro data "could potentially show the VE overstated the job number, the evidence before the Court is not conclusive," and therefore ALJ properly relied on VE testimony); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 18, 2014) ("[P]laintiff's lay assessment of the raw vocational data derived from Job Browser Pro does not undermine the reliability of the VE's opinion."); *Valenzuela v. Colvin*, 2013 WL 2285232, at *3-*4 (C.D. Cal. May 23, 2013) (rejecting plaintiff's assessment, in part, because it "was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context"); *see also Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (collecting cases that "uniformly rejected" arguments that Job Browser Pro data undermined VE's testimony). Indeed, Job Browser Pro is not a published source recognized as authoritative by the Social Security regulations. *See* 20 C.F.R. § 416.966(d).

Here, plaintiff offers nothing more than raw data from Job Browser Pro, with no expert explanation of the numbers in the report. Certainly, as discussed above, the Job Browser Pro printouts are suggestive that the VE may have misstated the job numbers, particularly given her testimony that she "just basically" uses Job Browser Pro's numbers. Even so, absent expert testimony interpreting the raw data submitted, it fails to undermine the VE's expert testimony. Without expert interpretation of the printout, and without testimony clearly linking the data on the printout to the VE's determination of the number of mail sorter jobs, the court cannot say the VE's testimony here was "so feeble, or contradicted, that it would fail to clear the substantial evidence bar." *See Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1155-56, 203 L. Ed. 2d 504 (2019) (finding VE testimony may be substantial evidence even when unaccompanied by

supporting data).  Thus, the ALJ was entitled to rely on the VE's testimony that there were 25,000 mail sorter positions.

Although the court finds no error by the ALJ in this respect, the Job Browser Pro printout does raise a serious question.  As discussed below, the court is remanding this case based on other error.  On remand, plaintiff may wish to question the VE about what appears to be a deviation from the Job Browser Pro numbers, or otherwise explore this issue further.

### 2. There Is No Conflict Between the OOH and the VE's Testimony

Plaintiff also argues there is a conflict between a mail clerk's educational requirement and plaintiff's education, which the ALJ failed to resolve.  P. Mem. at 18-19.  Specifically, that the OOH's statement that a typical entry-level education for the mail sorter job is a high school diploma or equivalent conflicts with plaintiff's ninth grade education.  *Id.*

Plaintiff raised this argument in her previous appearance in this court, with the court rejecting it.  *See* AR at 741-44.  Although the Commissioner's regulations state the OOH is one of several competent sources of job information, the OOH is by no means the controlling source.  *See* 20 C.F.R. §§ 404.1566(d), 416.966(d).  The ALJ was not obligated to resolve any conflict between the OOH and the VE's testimony.  *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT . . . but [plaintiff] cites to no authority suggesting the same is true for the CBP and OOH.") (internal citations omitted).  Indeed, the DOT is the only rebuttable presumptive authority on job classification.  *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Even assuming the OOH were binding on the ALJ, plaintiff fails to show the VE's testimony is in fact inconsistent with the OOH.  OOH does not state the mail sorter position requires a high school diploma; it only states that a typical

10

education requirement is a high school diploma or equivalent.[3] As such, there is no apparent conflict between the VE's testimony and OOH. *See Watts v. Berryhill*, 2018 WL 4961567, at *6 (C.D. Cal. Oct. 12, 2018) (collecting cases finding no conflict where "OOH education levels for the jobs identified by the VE merely state that a high school diploma is 'typical,' not that it is *required*").

### 3. The ALJ Failed to Resolve the Inconsistency between the VE's Testimony and the DOT

Plaintiff also argues the ALJ erred in failing to resolve a conflict between the VE's testimony and the DOT. P. Mem. at 18. Specifically, plaintiff argues the VE's testimony that plaintiff could perform the job of mail sorter conflicts with the DOT because the job has a Reasoning Development Level of 3, which is beyond plaintiff's RFC limitation to noncomplex work. *Id.*

At the hearing, the ALJ asked the VE to assume an individual was limited to noncomplex tasks and had other limitations. AR at 662. The VE testified such an individual would be able to perform the job of mail sorter, among others. *Id.* at 663. The ALJ asked whether the VE's testimony was consistent with the DOT. *Id.* at 665. The VE testified it was consistent with the DOT, except for a variance as to standing and sitting limitations, which the VE explained. *Id.* at 665-66.

Under the DOT, the job of mail clerk requires a Reasoning Level of 3. *See* DOT 209.687-026. A Reasoning Level 3 job requires an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT 209.687-026. The Ninth Circuit has held "there is an apparent conflict between the residual functional

---

[3] *See* https://www.bls.gov/ooh/office-and-administrative-support/postal-service-workers.htm

11

capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). When there is an apparent conflict, the ALJ must reconcile the inconsistency. *See Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007). The ALJ must ask the expert to explain the conflict and determine whether the explanation is reasonable. *Id.* In *Zavalin*, the Ninth Circuit found the ALJ erred in failing to recognize an inconsistency between the plaintiff's limitation and the demands of Level 3 Reasoning. *Zavalin*, 778 F.3d at 847.

Defendant argues there is no conflict because plaintiff was not limited to repetitive work, and was not limited to simple work, only noncomplex work. D. Mem. at 6-7. But while the ALJ did not use the term "simple," there is no meaningful distinction between "noncomplex" and "simple." *Ebony B. v. Berryhill*, 2019 WL 1296875, at *3 (C.D. Cal. Mar. 21, 2019). As to defendant's argument there is a distinction between the finding in *Zavalin* because the ALJ here did not limit plaintiff to repetitive or routine tasks, courts have not found this distinction compelling. *See Cobb v. Colvin*, 2016 WL 797564, at *4 (C.D. Cal. Feb. 29, 2016) (finding Commissioner's distinction between "simple instructions" and "simple, repetitive tasks" not compelling, and finding the ALJ erred in failing to resolve the conflict between plaintiff's RFC limitation to simple instructions and Reasoning Level 3 jobs); *see also Thompson v. Colvin*, 2015 WL 1476001, at *4 (E.D. Cal. Mar. 31, 2015) (finding conflict between plaintiff's RFC limitation to simple tasks and a Reasoning Level 3 job); *Clemons v. Colvin*, 2015 WL 10945574, at *4 (D. Nev. Dec. 15, 2015) (same). As such, the ALJ erred in failing to resolve this inconsistency.

Defendant points to medical evidence to argue plaintiff is able to perform at least Reasoning Level 3 work. D. Mem. at 7-8. Defendant also attempts to distinguish plaintiff's case from the claimant in *Zavalin* by arguing there is no

indication plaintiff here required special education classes, and furthermore plaintiff had a long work history as a sales associate. *Id.* at 7. This court is required to review "the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citation omitted). Defendant's argument that plaintiff in fact is able to perform Reasoning Level 3 work is not persuasive. *See Jones v. Colvin*, 2016 WL 4059624, at *3 (C.D. Cal. July 27, 2016) (rejecting the Commissioner's argument that the plaintiff's case could be distinguished from *Zavalin* because he had no signs of mental illness, never took special education classes, and Global Assessment of Function scores indicated he could perform Reasoning Level 3 jobs); *Standafer v. Colvin*, 2016 WL 633854, at *3 (C.D. Cal. Feb. 16, 2016) (holding the court cannot find harmlessness based on evidence in the record that demonstrated plaintiff would perform a Reasoning Level 3 job because the ALJ did not rely on that evidence to support his deviation from the DOT).

Accordingly, the ALJ's error in failing to resolve the inconsistency between the DOT's reasoning level requirement for the mail sorter position and plaintiff's RFC was not harmless. The ALJ consequently erred at step five.

**B.     The ALJ Properly Discounted Plaintiff's Testimony**

Plaintiff additionally argues the ALJ failed to articulate clear and convincing reasons for discounting her complaints as to her dexterity limitations. P. Mem. at 13-17.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine

whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *accord Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346. Lack of corroborating medical evidence cannot be the sole basis for rejecting plaintiff's testimony, but it is a permissible factor to consider. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence is a factor the ALJ can consider in a credibility analysis); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence") (citation omitted). The ALJ must also "specifically identify the testimony [from the claimant] that she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan*, 246 F.3d at 1208).

At the first step, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 625. Turning then to the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for

discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because her statements were not entirely consistent with the evidence, she responded well to treatment, she was noncompliant with prescribed treatment, and she had only minimal treatment in recent years. *Id.* at 626-27.

First, the ALJ noted multiple inconsistencies between plaintiff's testimony and the medical and other evidence in the record. *Id.* at 626. The ALJ specifically found the evidence undermined plaintiff's allegation of poor dexterity. *Id.* at 627. Plaintiff testified she could only walk for five minutes before falling and experiencing pain, and was prescribed a cane in approximately 2010, which she uses for very short walks while using a walker for longer distances. *Id.* at 649-50, 655. Plaintiff further testified she could not open jars, and while she could open front doors and car doors she could not do it repetitively due to pain. *Id.* at 658.

The ALJ found plaintiff's statements inconsistent with the evidence. In February 2011, plaintiff declined to cooperate to test her left grip strength and flexion, extension, and lateral bending. *Id.* at 626 (citing *id.* at 428, 429). The ALJ also noted in the same examination, plaintiff declined tandem, heel, and toe walking, and furthermore, was observed walking quickly to the car, where she opened the door with her left hand. *Id.* at 627 (citing *id.* at 430). In September 2015, Dr. Seung Ha Lim found plaintiff was able to generate twenty pounds of force in each hand, and her strength was 5/5 throughout without focal motor deficits. *Id.* at 897, 899. In the same examination, Dr. Lim observed plaintiff had a normal gait and balance, and did not require the use of assistive devices for ambulation. *Id.* at 898, 899.

Plaintiff argues the activities and reasons cited by the ALJ have nothing to do with the level of finger and manual dexterity; she argues finger dexterity refers to the ability to move the fingers and manipulate small objects with the fingers rapidly or accurately, and manual dexterity refers to the ability to use the hands

15

easily and skillfully, and work the hands and placing and turning motions. P. Mem. at 16-17. In the U.S. Department of Labor's Revised Handbook for Analyzing Jobs ("RHAJ"), finger dexterity is defined as the ability to move the fingers and manipulate small objects rapidly or accurately. RHAJ at 9-25. Manual dexterity is defined as the ability to move the hands easily and skillfully, and ability to work with the hands in placing and turning motions. *Id.* at 9-28.

The ALJ pointed to the inconsistencies just recounted to discount plaintiff's credibility generally. Not all these reasons go towards the issue of dexterity, but certain of the cited inconsistencies do go to plaintiff's dexterity allegations. Plaintiff failed to cooperate with left grip strength testing. AR at 428. This failure to cooperate with testing supports the ALJ's evaluation of plaintiff's credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("[plaintiff's] efforts to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility") (citation omitted). Plaintiff was also observed carrying a heavy and large quad cane with her left hand without difficulty and opening a car door with the same hand. AR at 430. More recently, in September 2015, plaintiff was able to generate twenty pounds of force in each hand despite testifying at the hearing she could not open jars. *Id.* at 897. While these inconsistencies do not directly go to finger dexterity, the ALJ only found the evidence undermines plaintiff's allegations of poor dexterity generally, not poor finger dexterity.

Furthermore, the ALJ noted plaintiff had responded well to right carpal tunnel release surgery, although had not undergone left carpal tunnel release due to its cost. *Id.* at 626. Indeed, on February 15, 2011, Dr. Jay Shah noted plaintiff's range of motion after her right carpal tunnel release was satisfactory. *Id.* at 492. On May 26, 2011, Dr. Mohsen Ali noted an electrodiagnostic study showed "remarkable improvement" in plaintiff's right arm after carpal tunnel release. *Id.* at 482, 484. A favorable response to treatment resulting in an improved condition

may be a clear and convincing reason to discount the claimed severity of alleged symptoms. *Bailey v. Colvin*, 669 Fed. Appx. 839, 840 (9th Cir. 2016) (credibility of allegations discounted where, inter alia, "medical evidence suggests that many of [claimant's] impairments had improved (e.g., migraines) or responded favorably to treatment (e.g., her carpal tunnel syndrome responded favorably to a splint . . .)"). Like the other evidence in the record that undermines plaintiff's testimony, including her allegations of dexterity problems, the evidence of plaintiff's improvement with treatment, particularly in her dominant right upper extremity, is a clear and convincing reason to discount her subjective complaints.

The ALJ additionally noted plaintiff did not take her insulin frequently, and did not comply with diet and exercise. *Id.* at 627; *see id.* at 234, 389, 516. The failure to follow a treatment plan may be a clear and convincing reason for discounting a claimant's credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("the individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"). The notes here indicate plaintiff was "poorly motivated for diet" and would simply forget to take her insulin. AR at 234, 516. While this noncompliance does not concern her dexterity, it is a clear and convincing reason for discounting her testimony generally.

Finally, the ALJ noted plaintiff had received only minimal treatment since 2012. *Id.* at 627. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Tommasetti*, 533 F.3d at 1039-40 (conservative treatment may be a clear and convincing reason for discounting a claimant's credibility). Indeed, plaintiff testified she was helped at night by wearing wrist braces. *Id.* at 625, 651.

Accordingly, the ALJ cited multiple clear and convincing reasons to

17

discount plaintiff's allegations, including her allegations about her dexterity.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, there are outstanding issues to be resolved and remand is required. On remand, the ALJ shall resolve any apparent inconsistencies between the VE's testimony and the DOT, and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

## VI.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 26, 2019

SHERI PYM
United States Magistrate Judge